STATE OF NORTH CAROLINA
v.
DENNIS WESLEY
No. COA08-695
Court of Appeals of North Carolina.
Filed February 17, 2009.
Attorney General Roy A. Cooper, III, by Assistant Attorney Generals Sharon S. Acree and V. Lori Fuller, for the State.
Charlotte Gail Blake, for defendant-appellant.
JACKSON, Judge.
Dennis Wesley ("defendant") appeals his conviction for assault with a deadly weapon inflicting serious injury. For the reasons stated below, we hold no error.
Defendant and Rita Benoy ("Benoy") had been involved in an intimate relationship since February 2006. On 25 November 2006, defendant was staying at a motel with Benoy and her roommate. He was planning on moving to Charlotte the next day for medical reasons so Benoy bought some alcohol to "celebrate." After consuming most of a fifth of gin and some beer, defendant went to find drugs. He smoked some crack cocaine and drank some more gin and beer before returning to the motel. Neither Benoy nor defendant could remember exactly what happened upon defendant's return. Benoy remembered a knock at the door and that it was defendant. He came in and she went back to bed. She then remembered walking down the sidewalk and someone came behind her and attacked her. She remembered lying on the ground, injured, seeing defendant trying to cut his throat. She asked him to stop. She saw no one else around her.
Defendant remembered trying to light a cigarette across town. The next thing he remembered was Benoy saying, "Dennis, you hurt me." At that point, "it was like a light c[a]me on." Defendant saw Benoy lying between his legs; there was blood in his hand and he had a knife. Knowing what he had done, he tried to cut his throat.
Defendant was charged with assault with a deadly weapon with intent to kill inflicting serious injury. On 28 November 2007, a jury found defendant guilty of the lesser included offense of assault with a deadly weapon inflicting serious injury. The trial court found he had a Level III prior record level and sentenced him in the presumptive range to a term of thirty-four to fifty months in prison. Defendant appeals.
Defendant argues that the trial court erred in allowing the expert testimony of Dr. William Haden ("Dr. Haden"), Benoy's treating physician, regarding the seriousness of Benoy's injuries. We disagree.
Pursuant to statute, when a criminal defendant brings an appropriate motion, the State must [g]ive notice to the defendant of any expert witnesses that the State reasonably expects to call as a witness at trial. Each such witness shall prepare, and the State shall furnish to the defendant, a report of the results of any examinations or tests conducted by the expert. The State shall also furnish to the defendant the expert's curriculum vitae, the expert's opinion, and the underlying basis for that opinion. The State shall give the notice and furnish the materials required by this subsection within a reasonable time prior to trial, as specified by the court.
N.C. Gen. Stat. § 15A-903(a)(2) (2007). A trial court may impose any of several sanctions should the State fail to comply. See N.C. Gen. Stat. § 15A-910 (2007). "The choice of which sanction, if any, to impose is left to the sound discretion of the trial court. A trial court will not be reversed on appeal absent a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." State v. Banks, 322 N.C. 753, 761, 370 S.E.2d 398, 404 (1988) (citations omitted) (emphasis in original). "[D]iscretionary rulings of the trial court will not be disturbed on the issue of failure to make discovery absent a showing of bad faith by the state in its noncompliance with the discovery requirements." State v. McClintick, 315 N.C. 649, 662, 340 S.E.2d 41, 49 (1986) (citations omitted).
Here, defendant brought several motions requesting discovery of expert witnesses. Although the State informed defendant that it intended to call Dr. Haden as an expert witness, provided Dr. Haden's curriculum vitae, and Dr. Haden's opinion that Benoy's injuries were life-threatening, the State did not provide defendant with Dr. Haden's report and the material upon which it was based. However, Benoy was uncooperative. She refused to allow the release of her medical records to the State voluntarily, and could not be located to serve her with notice of a hearing in order to obtain a court order requiring their release. As our Supreme Court recently noted in State v. Gillespie, 362 N.C. 150, 655 S.E.2d 355 (2008), "nothing in the language of [section 15A-910] indicates that th[e] authority [to sanction for discovery non-compliance] extends so far as to punish either the State or a criminal defendant for the actions of non-parties." Id. at 155, 655 S.E.2d at 358.
Because the State did not have Benoy's medical records to provide to defendant, but did provide Dr. Haden's name, curriculum vitae, and basic opinion, some effort was made to comply with discovery. Therefore, we cannot say that the trial court abused its discretion in allowing Dr. Haden to give his expert opinion as to the seriousness of Benoy's injuries.
Defendant also contends that the trial court abused its discretion in failing to allow a continuance, or at least a recess, to allow defense counsel to review Dr. Haden's records prior to cross-examining him. We disagree.
Dr. Haden testified from his own personal file, not from hospital records. Defendant had notice that Dr. Haden would testify and knew his basic expert opinion. Although the trial court did not grant a recess to permit defense counsel to review Dr. Haden's file, it did permit defense counsel to review the notes from which Dr. Haden testified. Further, the trial court is not required to impose any sanction pursuant to section 15A-910(a)(2). Therefore, we cannot say that the trial court abused its discretion in failing to grant a continuance or recess.
Even assuming arguendo that the trial court erred, any such error was not prejudicial to defendant's case. Paramedic William Baker testified that when he arrived, Benoy was lying in a large puddle of blood. He stated that "the nurse and the doctor in [sic] route called it a priority one which is critical at that time due to the amount of blood she had lost and the nature of the wounds to her." Police Officer Sean Keeter testified that Benoy was in a puddle of blood; she was covered in blood; she had wet blood on her shirt; and it appeared she had been stabbed in the abdomen. He recounted that Benoy told him defendant had stabbed her five times. Detective Sergeant Matthew Flynn testified that he took pictures of the crime scene and of Benoy's injuries. These pictures were introduced into evidence and showed a blood puddle on the sidewalk outside of Benoy's room, blood in her bed, blood on the carpet in her room, and that Benoy had stab wounds to her arm, her left side torso, her right side torso, and to her head. Had Dr. Haden not testified at all, from this evidence, the jury could determine that Benoy's injuries were serious.
Because we can not discern an abuse of the trial court's discretion, we hold no error in the trial below.
No error.
Judges McGEE and HUNTER, JR. Concur.
Report per Rule 30(e).